OPINION
Kendra J. Clark was indicted in September 2000 by a Franklin County grand jury on six counts: two counts of aggravated vehicular homicide, indicted both as felonies of the second and third degree, respectively; two counts of aggravated vehicular assault, indicted both as felonies of the third and fourth degree; and, finally, two counts of operating a motor vehicle while under the influence of alcohol or drugs ("OMVI"), both first-degree misdemeanors.
The charges stemmed from a fatal collision during the early morning hours of July 15, 2000. Ms. Clark drove her vehicle left of the center lane, swerving into an oncoming car. The passenger in the other car was killed instantaneously, and the other driver was seriously injured. Ms. Clark, 20-years-old at the time, later admitted that she had been drinking alcohol immediately before the accident. Not surprisingly, both Ms. Clark herself and her husband, who was a passenger in her car, also suffered significant injuries.
The parties pursued discovery and continued the trial date several times. The record indicates that relatively early during the trial preparation stages of this case, the trial court granted defense counsel's motion for fees to hire an accident reconstruction expert to ascertain the precise circumstances giving rise to the collision.
On September 18, 2001, defense counsel filed several motions, including motions to suppress the results of Ms. Clark's blood-alcohol test and her statements made to police officers soon after the accident. However, the motions were soon rendered moot when the parties resolved the case on October 1, 2001, pursuant to a plea agreement.
Ms. Clark pled guilty to two of the six counts: aggravated vehicular homicide as a third-degree felony, and aggravated vehicular assault as a fourth-degree felony. As part of the plea bargain, the trial court entered a nolle prosequi as to the remaining counts. The court ordered preparation of a presentence investigation report ("PSI") and scheduled the case for sentencing on November 19, 2001.
A sentencing hearing was conducted on November 19, 2001. Pursuant to an entry journalized November 21, 2001, the trial court imposed the statutory maximum prison terms on each count: five years on the aggravated vehicular homicide and 18 months on the aggravated vehicular assault. The transcript of the sentencing hearing indicates the judge's intention to order the sentences to be served consecutively, although both the trial court's "disposition sheet" and the entry itself are silent in this respect.
Kendra J. Clark ("appellant") appeals the respective prison sentences imposed by the trial court, assigning three errors for our consideration:
"First Assignment of Error
"The trial court erred by imposing the maximum allowable sentence without specifically finding the factors set forth in R.C. 2929.14(C).
"Second Assignment of Error
"The trial court committed reversible error by imposing a sentence of imprisonment for the commission of a third-degree felony without making the findings required by R.C. 2929.11 and 2929.12.
"Third Assignment of Error
"The trial court erred in imposing consecutive sentences in the absence of any evidence in the record of any of the factors enumerated in R.C.2929.14(E)."
The more serious offense of which appellant was convicted is aggravated vehicular homicide, proscribed by R.C. 2903.06, in pertinent part, as follows:
"(A) No person, while operating * * * a motor vehicle * * * shall cause the death of another * * * in any of the following ways:
"(1) As the proximate result of committing * * * [OMVI];
"(2) Recklessly[.]
The terms of the plea agreement required appellant to plead guilty to the offense as a third-degree felony, having committed the offense "recklessly" as set forth in R.C. 2902.06(A)(2). Had appellant pled guilty under R.C. 2903.06(A)(1), where the homicide occurs as a result of an OMVI, the offense would have been a second-degree felony.
The fourth-degree felony to which appellant pled guilty, "aggravated" vehicular assault[1], is essentially the same offense as the homicide offense, with one distinction: the assault charge arises when the victim of substantially the same reckless conduct sustains "serious physical harm," as opposed to death. R.C. 2903.08(A)(2). Similar to the homicide circumstance, had appellant pled guilty to provision (A)(1) of this section, that pertaining to assault as the result of an OMVI offense, the offense would have been aggravated vehicular assault, generally a felony of the third degree.
We glean the essential facts surrounding this tragic incident from the transcripts of the plea and sentencing proceedings, as well as the PSI. First, as part of the plea and allocution proceedings, the prosecutor recited the following version of the facts:
"This happened on the 15th of July of last year. About 12:30 in the morning, Columbus Police were dispatched the Accident Investigation Unit was dispatched out to South High Street here in Columbus just north of where it crosses 104.
"When they got there, they found a 1977 Lincoln Continental had went left of center and hit this Continental was being driven by [appellant] * * *. It hit a Mazda driven by Roger Crabtree, and Mark Evans was the passenger in that car. It was a 1993 Mazda MX-6. The impact forced the Mazda backwards and flipped it.
"When the police got there, Mr. Evans had been pronounced dead, and Mr. Crabtree had been taken to the hospital. Further investigation showed that, in fact, [appellant] was driving the car * * *, she admitted as such, and that she and her husband had been earlier in the evening at Rainbow Lanes, there a little further south on High Street. In the hospital, [appellant] told [an officer] that she had six or seven Black Velvets and Cokes.
"Her blood was drawn for purposes of a blood-alcohol test, and it tested at .10, shortly, two hours, after the wreck.
"At that point, * * * [appellant] was charged * * *." (Tr. 6-7.)
The trial judge asked appellant's trial counsel if counsel took any "exceptions" to the prosecution's statement of facts. Counsel did take exception. First, counsel took issue with "* * * the extent that they're saying that [appellant] had six to seven Black Velvets." Defense counsel alluded to an investigation which must have been "really botched," suggesting that a small woman such as appellant could not consume that many drinks "* * * for her to have [only] a .10 alcohol content." In another apparent attack on the investigation of the accident, counsel submitted that "* * * no one tried to figure out, * * * who was driving the other car," suggesting that a possibility existed that the other driver might have been responsible for the accident.[2] (Tr. 7-8.) Defense counsel closed by noting that she was not attempting to "try" these suppositions.[3] However, as discussed infra, defense counsel revisited these issues again at sentencing.
The analyses required by the assignments of error are similar so we will address them jointly, particularly given the circumstances of this case.
The three assignments of errors collectively challenge the trial court's imposition of maximum, consecutive prison terms. By all her assignments of error, appellant argues that the trial court spoke in "generalities" only and, in so doing, failed to satisfy the specific findings required by R.C. Chapter 2929's sentencing statutes.
In her first assignment of error, appellant contends that the trial court violated R.C. 2929.14(C) et seq., in imposing the maximum allowable sentence without the required findings. In a similar vein, appellant's second assignment of error submits that the trial court erred in imposing any prison sentence for the third-degree felony conviction because the court failed to make the findings required by R.C. 2929.11 and 2929.12. Finally, appellant argues, and the state concedes, that the trial court erred in failing to satisfy R.C. 2929.14(E), the sentencing statute applicable to imposition of consecutive sentences.
Preliminarily, we set forth the essential statutory guidelines by which trial courts are bound in sentencing criminal defendants generally. The legislature has codified the "purposes and principles of sentencing" in R.C. 2929.11:
"(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
"(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." (Emphasis added.)
With respect to the imposition of maximum sentences, we are first bound by R.C. 2929.14(C), which speaks directly to the legality of maximum prison terms. That provision, in relevant part, mandates that such sentences are authorized "* * * only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *."
R.C. 2929.12 enumerates "seriousness" and "recidivism" factors, which examine the "seriousness of the offender's conduct and its impact upon the victim" and the necessity of "protect[ing] the public from future crime" by the offender.
R.C. 2929.12(B) is directed at the "seriousness" determination, setting forth factors which might indicate that the offender's conduct is "more serious than conduct normally constituting the offense." In toto[4], these factors are:
"(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
"(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
"(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
"(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
"(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
"(6) The offender's relationship with the victim facilitated the offense.
"(7) The offender committed the offense for hire or as part of an organized criminal activity.
"(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
"(9) If the offense is a violation of * * * [several enumerated statutes including, inter alia, domestic violence] involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent * * * of one or more of those children.
Division (D), again in toto, sets forth recidivism factors indicative of those offenders "who pose the greatest likelihood of committing future crimes," as follows:
"(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
"(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
"(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
"(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
"(5) The offender shows no genuine remorse for the offense. "
In addition to those factors specifically enumerated above, trial courts have discretion to consider "* * * any other factors that are relevant to achieving those purposes and principles of sentencing set forth in * * * [R.C.] 2929.11 * * *." R.C. 2929.12(A).
R.C. 2929.14(E), the subject of appellant's third assigned error to which the state accedes, provides direction to trial courts imposing consecutive prison terms. The parties agree that the court failed to articulate with the specificity required pursuant to R.C. 2929.14(E)(4), which reads, in pertinent part:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing * * * or was under post-release control for a prior offense.
"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Emphasis added.)
A plain reading of this statute reveals that the analysis required thereunder includes language substantively similar to those statutes mandating consideration of "seriousness" and "recidivism" factors; thus, the consecutive-sentences analysis is much akin to the maximum-sentence analysis.
Turning again to the record before us, we look independently to discern whether the trial court sufficiently complied with the applicable sentencing considerations.
In its judgment entry journalizing appellant's conviction and sentence, the trial court included the following language, in relevant part:
"* * * The Prosecuting Attorney and counsel for [appellant] did not recommend a sentence.
"The Court afforded counsel an opportunity to speak on behalf of [appellant] and addressed [appellant] personally[,] affording her an opportunity to make a statement on her own behalf in the form of mitigation and to present information regarding the existence or non-existence of the factors the Court has considered and weighed.
"The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14. The Court finds that a prison term is not mandatory pursuant to R.C. 2929.13(F).
"The Court hereby imposes the following sentence: Five (5) years as to Count Two and Eighteen (18) months as to Count Six at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.[5] It is further ordered that * * * [appellant's] Ohio Bureau of Motor Vehicles Driver's License shall be suspended for Three (3) years, without work driving privileges.
"* * *
"After imposing sentence, the Court gave its finding[s] and stated its reasons for the sentence as required by R.C. 2929.14(B)(C) and (E)." (Entry at 1-2; emphasis added.)
In ascertaining the trial court's "findings" and "reasons" as alluded to in its entry, we turn first to the transcript of the sentencing proceedings.
The trial judge first heard the respective arguments from counsel. Appellant's counsel devoted approximately one-half of her lengthy comments revisiting the issue of the initial police investigation and suggested that appellant simply wanted the case over instead of attempting to try the case to determine if appellant was actually at fault in the accident. Counsel discussed the notion that the decedent might have been suicidal and that the injured man, Mr. Crabtree, had filed a civil action against appellant, who did have insurance coverage at the time.
The remaining portion of defense counsel's argument concentrated on the numerous letters in support of appellant from her employer, coworkers and family. Finally, counsel offered an expression of remorse on behalf of appellant. When the judge asked appellant if she had anything to say before sentencing, appellant's response was merely, "No, thank you." (Tr. 22.) With that, the trial judge explained its rationale for imposing maximum, consecutive sentences, which rationale we quote at length as it comprises the heart of the claimed sentencing errors:
"The Court wants to point out for the record that if we were going to dispute how this accident occurred, that was a matter that should have been tried to a jury or to the Court, because I have a statement of facts before me based upon the investigation that was done, and that investigation indicates that [appellant] went left of center and caused the death of Mr. Evans as a result, and caused what appears to me to be permanent injuries to Mr. Crabtree.
"With regard to the quality of the investigation, those things affecting the Court's sentencing, the statutory factors that I have to look at are was the offense more serious, was it less serious, is there a likelihood of recidivism, would a community control sanction demean the seriousness of the offense that was caused? Those are the factors that I have to look at.
"So when I go through the [PSI], I have a finding that there was physical harm caused to a person, that being Mr. Crabtree. He suffered permanent injuries. In terms of the seriousness, I have his permanent injuries. I have the death of Mr. Evans. Clearly, we cannot get any more serious than that. So that offense is more serious.
"In terms of the recidivism factors, [appellant] has never been before the Court before; however, there is an indication that clearly she had drank that night. Now she is saying that she wasn't. Throughout this, her statement, and I do * * * want to you were reading part of the statement with regard to Mr. Crabtree's indication that Mr. Evans may have expressed some thoughts about problems in his marriage, et cetera. I think the more relevant thing for sentencing is not Mr. Evans' state of mind, but is her comment about this. I was involved in a car accident that resulted in a fatality, no memory of how or why the accident happened, and then there is a paragraph indicating that * * * the next thing she remembers is after the accident occurred, and then she says, she stated that the Court claimed she had gone left of center.
"Well, I haven't claimed that. The claim is based by the State of Ohio on their indictment. That is their findings. Then she indicates it, and I read that she is being blamed for the accident. She feels the police were not fair in their search for evidence because they did everything they could do to prove she had been drinking, but did not examine evidence suggesting the victim's car might have been at fault. She ended by saying that she is sorry it happened. It just happened, doesn't know how or why.
"I want the record to reflect that the Court granted at state expense an investigator to do an independent investigation for you * * *. In fact, I think he submitted a bill for over $2300. So all of those matters could have been presented to a jury. They were not.
"As I indicated, the evidence I have before me is you went left of center when you were intoxicated. It caused the death of Mr. Evans. It left his two children without a father. They will never see their father again.
"* * *
"Mr. Crabtree to this day has not recovered from the injuries. It is apparent he is probably not going to fully recover from those injuries that you caused. So with that, I think it is very clear, based upon the evidence I have before me, community control sanctions in this case, it would be an understatement to say that it demeans the seriousness of this offense.
"The fact that you are blaming the investigation that was done on this case, that Mr. Evans may have been suicidal, that things might not have been right with his wife, that he may have been drinking, that he may have had cocaine in his system, you need to get over it, and you need to start looking at what you did instead of blaming everybody else and what is going to happen to your son.
"I feel terrible for your [4-year-old] son, and you should too, because there is no reason why he should be without his mother like his is going to be without her. But he is going to get to see his mom again. Mr. Evans' children are not going to get to see him again. They aren't going to get to spend Christmas with him, and it seems to me that in light of what your actions caused, a prison term is not only appropriate, but it is the only proper resolution for sentencing in this case, and I am going to sentence you to a term of five years on the felony of the third degree, a sentence of 18 months on the felony of the fourth degree. The Court is going to order that those be served consecutively to each other because of the injury and the death that occurred in this case. I think that the facts speak for themselves in terms of the findings that the Court would need to make with regard to the sentences being consecutive and being the maximum sentences as they are." (Tr. 22-27; emphasis added.)
Also included in the record is the court's "felony sentencing (worksheet)," which roughly tracks some of the language from some of the sentencing statutes. Under the "More Serious" list of nine factors, the judge marked only one, number nine's "any other factor," writing "2 victims[,] 1 died." Under "Recidivism Likely," the judge marked three: a "failure to acknowledge pattern of drug or alcohol abuse that is related to the offense"; "no genuine remorse"; and, "any other factor," listed as "blames investigation."
As indicated infra, the sentencing entry indicates that neither defense counsel nor the prosecution recommended a sentence. However, the prosecutor asked the court to "impos[e] prison time," although no specific amount of incarceration was requested. (Tr. 20.) The transcript reveals that defense counsel vigorously sought some degree of leniency on behalf of appellant. A reading of this transcript, in which appellant utters some three words, raises a concern that appellant might have been judged harshly based in part upon the comments of her counsel, particularly counsel's attack on the police investigation of the collision.
This court has observed on other occasions that any form of homicide necessarily results in "serious" physical harm to its dead victim. Clearly, most homicides leave more victims than the person who died, including grieving family members of the decedent. See, e.g., State v. Beauford (Apr. 25, 2002), Franklin App. No. 01AP-1166. See, also, State v. Brittian (Jan. 22, 2002), Franklin App. No. 01AP-621.
The same considerations apply with respect to a victim of vehicular or aggravated vehicular assault. The victim of a vehicular assault must have sustained serious injuries.
However, the inquiry does not end there because the legislation delineated in detail above mandates more. The trial court's findings on the record must do more then reiterate the elements of the offenses of which appellant was convicted. The trial court must determine, inter alia, whether appellant's conduct in this case was "more serious" than that conduct "normally constituting the offense," and must specify facts upon which to base a "recidivism likely" finding.
As noted earlier, the state concedes error with respect to the trial court's imposition of consecutive sentences.
Based upon our independent review of this record, and upon the state's concession of a sentencing error which mirrors the substance of the errors raised under the remaining assignments of error, we find that the trial court erred in not sufficiently articulating specific findings in support of the sentences imposed.
Finally, as noted above, the sentencing entry is silent with respect to whether the sentences are to be served consecutively. While the judge's intention to order the sentences to be served consecutively is readily apparent from the transcript, it is well-established that a court speaks pursuant to judgment or journal entries. In fact, we note that the "Notice of Commitment and Calculation of Sentence" from the Ohio Department of Rehabilitation and Correction reflects the sentences imposed on each conviction but calculates the "total sentence" as only five years. Whatever the resolution of the substantive issues on remand, this defect should be remedied by indicating in the entry the type of term intended to be ordered.
Based upon the foregoing, the three assignments of error are sustained.
Having sustained the assignments of error, this cause is reversed and remanded with instructions to conduct new sentencing proceedings consistent with this opinion.
Judgment reversed and cause remanded with instructions.
KLATT and BOWMAN, JJ., concur.
[1] While appellant was indicted on charges of "aggravated" vehicular assault, appellant's offense as pled to, pursuant to statute, was vehicular assault. The statute makes clear that any violation of R.C.2903.08(A)(2), "recklessly" causing the harm is "vehicular assault," regardless of the degree of the offense and so-called "legal fictions" which commonly result from plea negotiations. R.C. 2903.08(B)(2).
[2] Defense counsel's suggestion that the "other driver" might have been the culpable party in this accident clearly stems from autopsy findings that the decedent had, inter alia, cocaine, alcohol, and analgesic narcotics in his system at the time of his death. However, no evidence was presented to contest the findings that the decedent, Mr. Evans, was a passenger in the other car, not the "other driver."
[3] As noted earlier, the trial court allocated funds to defense counsel to hire a named accident reconstruction expert; the court's entry filed January 5, 2001, granted $500 to pay the expert to review the accident scene and documents relating thereto, in addition to $800 per day if the expert were needed to appear for trial. A later entry filed August 13, 2001, indicates defense counsel's need for a continuance because "defense needs to retain [a] new accident reconstructionist." This was followed by a September 5, 2001 entry, pursuant to which the court granted defense counsel's motion for payment for services rendered by two new experts. At sentencing, the trial judge made much the same general observation. The record does not reveal any findings or conclusions from these potential witnesses.
[4] We list those factors in toto, as they currently read in the revised version of the statute, which has been amended numerous times subsequent to the date of appellant's offense, most recently with an effective date of January 1, 2002. However, the amendments do not materially affect this appellant.
[5] This portion of the sentencing entry typically designates whether the terms of incarceration are to be served concurrently or consecutively.